*84 The opinion of the Court was delivered by
Dargan, Ch.
The testator James Beaty, by his last will and testament, in the second clause, gave to his daughter Mary, two negroes, Charles and Maria, and to his daughter Peggy, (who is one of the complainants,) he gave a negro named Louisa: the difference between the negroes given to Mary and Peggy, to' be paid to Peggy in money; so as to equalize their legacies; and the difference was to be ascertained by appraisers chosen by the executors.
The residue of his estate, after the payment of debts, he gave to his’wife for life ; and after her death, he gave the personal estate to be equally divided between his daughters Mary, Peggy, and Jenny; and his lands after his wife’s death, he gave to be equally divided among all his children.
Then after authorizing his executors to sell the house and lot before disposed of, he declares as follows: “ Should any of my daughters above mentioned, hereafter marry and die, leaving no issue living at the time of their death, their respective shares shall go to the survivor or survivors, free from any claim or control of their husbands.”
In the concluding clause the testator proceeds to say: “ As my daughter Nancy and son Archibald are already provided for, I leave them one hundred dollars to be equally divided between them.” It is important to remark, that Nancy and Archibald are then -first mentioned by name. They were then married, and were living apart from the testator. His daughters Mary, Peggy and Jenny were single, and were living with him at the date of his will, and of his-death.
The first question that arises is, what estate did the testator’s daughters, Mary, Peggy and Jenny, take in the legacies given to them ? The Chancellor who tried the cause was of the opinion, that each of them took an absolute estate; which was defeasi-ble only upon the condition that she should die without leaving issue living at the time of her death. Nothing is given to the issue. No mention is made of the issue, except as forming a part of the condition upon which the previous, direct and abso *85 lute gift was to be defeated. The estate given to them in the second clause was not cut down to a life estate by any subsequent provisions; and was to go over to the survivors only upon the contingency which was provided for in the will.
The next question is, who are the parties, that, under the description and character of “ survivors,” are entitled to take, in the event that any of the testator’s before-mentioned daughters should marry and die leaving no issue alive at the time of their death? Were the benefits of the survivorship, (which were to accrue upon the contingency expressed), intended to embrace all the testator’s children, or to be restricted to his three daughters Mary, Peggy and Jenny? It is perfectly clear, that it was not intended to embrace his son Archibald Beaty; because the shares which were to go over in the event expressed, “ were to be free from any claim or control of their husbands a form of expression which would be inapplicable in the case of a bequest to a son.
Was Nancy Cathcart, the testator’s married daughter, intended to be provided for by this limitation in favor of survivors ? The words of the will upon which this question mainly turns are as follows: “ Should any of my daughters above mentioned, hereafter marry and die leaving no issue alive at the time of their death, their respective shares shall go to the survivor or survivors, free from any claim or control of their husbands.” The testator was not limiting the share which he had given to Nancy in the division of the real estate. For the expression “ should any of my daughters above mentioned hereafter marry and die,” &c., excludes Nancy, who was at that time married. It was only the shares ef his single daughters, upon which he was imposing this conditional limitation. This construction derives much additional strength from the fact, that it was the shares of his “ daughters above mentioned,” that he was affecting to restrict by a condition, which might at some day defeat the estates that he had given them. Up to that clause in the will, he had only mentioned by name, his three daughters Mary, Peggy and Jenny. Though he had in a previous clause, di *86 rected that his real estate after the death of his wife, should be equally divided among all his children; which would include Archibald and Nancy; yet it is only in a subsequent part of the will, that he alludes to them by name. As it was only the shares of his daughters Mary, Peggy and Jenny that he subjected to the condition,, the most natural, and, it seems to me, the only proper construction is, that when he spoke of survivors, he meant the survivor or survivors of those three whom he had previously named in the same sentence.
It is apparent that he put Archibald and Nancy on the same footing. “ As my daughter Nancy, and my son Archibald, are already provided for,” says he, “ I leave them one hundred dollars ■ to be equally divided between them.” He had also given to each of them an equal share of the land with the others, on the death of his wife. There is no construction, short of that which would amount to a most perfect distortion of the testator’s meaning, which would let in Archibald to the benefits intended to be conferred on survivors, in the clause that I am considering. And as he and Nancy throughout, seem to have been put in the same category, it is a strong argument against her claim.
This construction is in harmony with what appears to be the scheme of the testator’s will. Archibald, and Nancy were married, and were living apart from the testator. He had, before the date of his will, provided for them by advancements. He so declares. His object was to provide for his wife and his three single daughters, who were then living with him; and who were not likely to marry. Accordingly, the principal provisions of the will are in their favor. And again, afc the death of his wife, he gave them all the personal estate, which he had given to her for life. Except the legacy of $50 to each of them, and a share of the land, which was of no great value, and in which the widow had a life estate, Nancy and Archibald take nothing under the will. They had been provided for before. The property which they had received from their father, and to which they had a perfect title in his life, could not be subjected to the *87 conditions of his will in favor of survivors; which he had imposed on that which he had given to his three unmarried daughters. This want of reciprocity was the reason probably, why the testator left them out in the provisions, in favor of survivors. This construction makes the whole will consistent and harmonious.
The conclusion is, that the defendant Archibald Beaty, and the defendants John S. Cathcart and Nancy J. Cathcart the children of testator’s daughter Nancy, (Mrs. Cathcart,) have no estate or interest, vested or contingent, in the slave Louisa and her children; which said slave Louisa was given to the complainant, Mrs. Margaret Ketchin, under the name of Peggy, by her father’s will. And as Jenny died in 1842, and Mary Beaty died in 1851, Mrs. Ketchin still surviving, her estate which she derived under her father’s will has become indefeasible. For, as the Chancellor has well observed in the Circuit decree, “ an estate to a survivor is upon the condition of survivorship.” This disposes of the first and second grounds of appeal.
The third ground of appeal has been abandoned.
The fourth ground of appeal is “ that Mary Beaty took an absolute estate in the negroes Maria and Charles, defeásible only on her both marrying and dying without issue, and that having failed to marry and leave issue, she had a perfect right to dispose of her property by will or otherwise.”
Mary Beaty died in August 1851, without issue and unmarried, having disposed by her will Of the slaves Maria and Charles, which she derived under the will of her father James Beaty, in the manner which has already been stated. The complainants, Thomas Ketchin and his wife Margaret Ketchin, set up in this bill a claim in behalf of the latter, to the negroes Maria and Charles under the limitations of James Beaty’s will. The claim is, that Mary Beaty having died leaving no issue alive at the time of her death, (though she never married,) the complainant, Mrs. Ketchin, is entitled to the negroes, as the last survivor of the three sisters. The Chancellor in his Circuit decree, gave a construction to the will, which sustains this *88 claim, ordered that the slaves Maria and Charles he delivered up to Mrs. Ketchin or her trustee, by Archibald Beaty the executor of Mary Beaty, and that the latter do account for their hire, &c.
In the consideration of this question, it will be necessary once more to advert to the clause of James Beaty’s will, under which it arises. The words are, “ should any of my daughters above mentioned, hereafter marry and die leaving no issue alive at the time of their death, their respective shares shall go to the survivor or survivors,” &c. This clause has been held by the Circuit Court, and by this Court, to have such an operation upon the previous absolute gift of the slaves in question, as to make the estate in said slaves a fee simple interest, defeasible upon a condition which was contingent. And the only question here is, whether the estate was to go over to the survivor upon the simple contingency of the first taker’s dying and leaving no issue at her death; or upon the double contingency of the first taker’s marrying and dying without leaving such issue alive at her death. The Chancellor did not think, that marriage was in the testator’s mind, as a part of the condition upon which the estate was to go over. He understood the testator “ to refer to marriage as preliminary and mere inducement to speaking of their issue.” “ I cannot,” he says, “ construe the will as imposing marriage as a condition to defeat the survivor-ship, which appears to be his main object. The words relating to the marriage of his daughters, are to have an effect only so far as they promote some intention on the part of the testator. Now, what purpose of the testator would have been accomplished, by the marriage of any one of the three, daughters named 7 None, it appears to me, except so far as the marriage might lead to their having issue. If they had no issue ; or died without issue, (whether they married, or did not marry,) then, and then only, was his intention effectuated, of limiting the property over.”
Thus the Chancellor reasoned; and he accordingly decreed, that on the death of Mary Beaty, without issue, although she *89 never married, the estate in the negroes Maria and Charles, went over to Mrs. Ketchin under the limitation of the will in favor of the survivor.
This construction is precisely the same, as would have been given to the will, if the testator had simply said : “Should any of my before-mentioned daughters die without issue alive at the time of their' death,” the property should go, over, in other words, it is the same as would have been given, if the testator had omitted to impose marriage as a part of the condition. This is rejecting, as without meaning, a portion of the will; not for being unintelligible, or repugnant, but because we are at a loss to understand his purpose. It is expunging from the will the words “ hereafter marryf and reading it, as if no such words were in it. I do not think we are authorized to do this. We are to take the will as we find it; to give every part some meaning, — and such a meaning as it is fairly capable of receiving, construed by itself, or in connexion with the other parts. If any part be unintelligible or repugnant, it may be rejected. But it cannot be said of the words stricken out by the Chancellor’s construction, that they are obnoxious to either of those objections. On the contrary, they have a plain signification, and no repugnancy; and consequently are entitled to their proper influence in the interpretation. The testator may have been capricious, or unreasonable ; but that is not an objection to the effectuation of his intentions clearly expressed.
Where, therefore, the testator has, as in this case, plainly said, in relation to an estate which he had previously given to three of his daughters, if any of them should hereafter marry and die leaving no issue alive at their death, their shares respectively should go over to the survivors: where he has annexed the double contingency of their marrying and dying without issue, as the condition on which their otherwise absolute estates were to be defeated, we are not authorized by any'rule of construction, to throw out of view one of the contingencies, and to make the estate go over to the survivor on the happening of only a part of the condition.
*90 I cannot undertake to say with any certainty, what was the object .of the testator in ordaining that the estate should not go over, if his daughters died unmarried, and without issue ; and in causing it to go over, in case they married and died without issue. As his meaning is plain, it would perhaps be useless to speculate. But I think I can perceive a motive that may have governed him,- which does not appear unreasonable. If his daughters died unmarried, and without issue, he was willing for them to have the absolute estate. For without husband, or issue, by the force of the natural affections, they would bestow it at their death, upon their brothers, and sisters, who were his own children. They would have no nearer objects of affection. If they married, and had issue, he was willing for them to take the absolute estate on account of their children; who ought to be provided for, and who, in the natural course of things, would take it from them in succession. But if they married, and died without issue, he was not willing for the husband, (who was a stranger to his blood, and not, in that case, united to his house by any but a severed tie,) to have the estate; but desired it to go back to his own children. Some such views as these, the testator may have had.
The Court is of the opinion, that the estate given by James Beaty to his three daughters Mary, Peggy and Jenny was not to be defeated, and to go over to the survivors, except upon the double contingency of their marriage and death without leaving issue alive.
So much of the Circuit decree as orders and directs the defendant, Archibald Beaty, to deliver up the slaves Maria and Charles to the complainants; and to account for their hire is reversed. In all other respects the said Circuit decree is affirmed, and the appeal dismissed.
Johnston, Dunkin and Waudlaw, CO., concurred.

Decree modified.